EASTERN DIST.
*April*, 1832.

HENDERSON
ET AL.
*vs.*
MAYOR ET AL.

---

## HENDERSON ET AL. *vs.* MAYOR ET AL.

3L 563,
49 540
3L(b)563
52 2102

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The mayor of the city of New-Orleans may order the demolition of works and buildings, which impede or interrupt the use of a passage along the river, in places to which the public have a right of way.

The facts are stated in the opinion of the court, delivered by *Mathews, J.*

By an ordinance of the City Council, passed on the fifth of October, 1830, a new levee was required to be made in front of the fauxbourgs Delor and Saulet, and the city surveyor was requested to lay off and mark the ground, on which it was to be raised. In performing this duty, he found the front of these fauxbourgs encumbered by wharves, sheds, &c. and steam saw mills, erected by the front proprietors on the alluvion of the river, so as to obstruct a free passage on its bank. The mayor, assuming a right, under the provisions of an act of the legislature, passed on the sixteenth of March, 1830, gave notice to the owners, requiring them to cause these

EASTERN DIST.
*April*, 1832.

HENDERSON
ET AL.
*vs.*
MAYOR ET AL.

encumbrances and obstructions to be removed within ten days after the said notice. They refused to comply with the requisition, applied to the court of the first district, and obtained an injunction against the proceedings of the corporation, which was afterwards dissolved, and they appealed.

In answering the petition for the injunction, the mayor and the other members of the corporation severed, and the cause was tried in the court below on a motion to dissolve the injunction, as it stood between the former and the plaintiffs, in relation to the orders to abate or remove the nuisances complained of.

The judgment of dissolution is said to be erroneous, in consequence of being wholly unsupported by the facts of the case. This conclusion is assumed, on the part of the appellants, by taking for granted all the allegations of the petition as not being denied by the answer of the mayor. If these pleadings appeared alone on the record, the consequence claimed would, perhaps, necessarily follow, for every thing like nuisance or improper obstruction to the free use of public property, or a legitimate enjoyment of things, common to the city and community generally, is negatived by the facts set forth in the petition. But in the record, at page 13, we find testimony on motion to dissolve the injunction, &c. This is the testimony of Pilié, the city surveyor, who laid out the space for the intended new levee and road, or street to front on the river, and refers to a report made by him to the mayor and city council. By this evidence, it is shown that the batture and bank of the river are encumbered with *buildings* and constructions of various kinds, so as to prevent a free passage along the shore, and *in* some places to interrupt its use to the public as a place of landing, &c.

Notwithstanding these facts, the counsel for the appellants contend: 1. That as the works and buildings ordered to be destroyed, had all been erected before the passage of the act of 1830, the second section of that act cannot apply to them. 2. The plaintiffs have violated none of the provisions of the law referred to in said act. 3. The works constructed by the plaintiffs are not encumbrances on public or city property.

EASTERN DIST.
*April* 1832.

HENDERSON
ET AL.
*vs.*
MAYOR ET AL.

4. Riparian proprietors having a right to erect mills on the banks of rivers, this includes the right to construct every accessory necessary to their use. 5. The District Court erred in applying to. private property the laws made exclusively to regulate the use and police of things which belong to nobody. 6. The lots of ground, on which said works and buildings are erected, encumber no street or other public place, and any law which authorises the destruction of them, is unconstitutional and void.

The petitioners declare themselves to be riparian proprietors of certain unincorporated fauxbourgs of the city of New-Orleans. Their property, being situated within the limits of the city, is subjected to the police regulations of the City Council, not to the authority of the police jury of the parish of Orleans. The corporation is authorised to exercise, within the limits of the city, the functions committed by the act of 1813, to police juries. See *section 7 of this act.* The fifth section contains a grant of powers to these juries, amongst which is found that of regulating the proportion and direction, the making and repairing of the roads, bridges, causeways, dykes, levees, and other highways. Also to make regulations as to clearing the banks of the river and other navigable streams, &c. The act of 1816, to which reference is made in the third section of that of 1830, authorises the City Council to make by-laws or ordinances to secure the safety and convenience of passing in the streets, ways, levees, and other public roads, &c.

The proceedings commenced by the corporation, (particularly that part of them in which the mayor assumed the agency, and which constitutes the contest now under consideration between him and the appellants,) seem to have been conducted in reference to the law of 1830. But it does not follow, as a necessary consequence, that the acts of the mayor must be considered as illegal and void, although they may not be justified by a strict interpretation of that act, provided they are authorised by other laws, in force at and previous to the time, when he ordered the works and buildings of the plaintiffs to be abated as public nuisances.

EASTERN DIST.
*April,* 1832.

HENDERSON
ET AL.
*vs.*
MAYOR ET AL.

It is a general principle of correct legislation, that laws should only be prospective in their operation. A just interpretation of the second section of the law of 1830, would probably limit its operation to works made subsequently to its enactment and would not, without the aid of laws previously existing, justify the proceedings of the appellee.

The act of the fourteenth of March, 1816, authorises the City Council (as we have already seen) to make and pass by-laws and ordinances, "to maintain the cleanness and salubrity of the city; to secure the safety and convenience of passing in the streets and squares, ways, levees, and other public roads, &c." It does not appear that any ordinance was passed by the council, in relation to the making of any road in front of the property of the plaintiffs, or in relation to the use of the batture there situated, until the fifth of October, 1830, and this ordinance seems to have been made in reference to the act of the legislature of that year. Consequently neither the act nor ordinance can rightfully operate on works or buildings, previously erected by the riparian proprietors. We, therefore, conclude that the two first propositions, assumed as true by the appellants, may be correct.

In relation to the third point, in which it is asserted, that the works constructed by the plaintiffs are not encumbrances on public or city property. This may be true with regard to ownership. But if the public, or the inhabitants of the city, have a right to the use of the places encumbered, and the works, thereon erected, impede and interrupt this public use, they may be considered as nuisances. The right of way, reserved in the grants of land fronting on the Mississippi, which authorises the proper authorities to lay out and cause public roads to be made on the banks of the river, does not destroy the right of alluvion, vested by law in the riparian proprietors. Yet, while such roads remain appropriated to public use, no person, not even the proprietor of the adjacent soil, and who might have a reversionary claim to the soil of the road itself, would be permitted to erect buildings or make any works thereon, having a tendency to impede passengers, or in any manner interrupt the public use of the road. Such

EASTERN DIST.
*April*, 1832.

HENDERSON
ET AL.
*vs.*
MAYOR ET AL.

works would constitute a nuisance, and might be lawfully abated or destroyed by orders from the police authority of the place, where they existed, or perhaps by any private individual.

By our laws, the use of the banks of navigable rivers is secured to the public. *Partidas 3, tit. 28, law 6. Louisiana Code, art.* 446. And no building, or any other work or fabrication, is permitted to be made on them, which may prevent or hinder such use, or its enjoyment, to the full extent of public utility. *Law 8, tit. 28, part 3,* which is expressed in the following terms: *"Molino, nin cañal, nin casa, nin torre, nin cabaña, ni otro edificio ninguno, non puede ningund ome fazer nueuament en los rios, por los quales los omes andan con sus nauios nin en las riberas dellos, por que se embargasse el vso comunal dellos. E si alguno lo fiziesse y de nueuo, o fuesse fecho antiguamente, de que viniesse daño al vso comnal, deue ser derribado,"* &c. *"nam publica utilitas præfertur privatæ, note* 2." The only question remaining on this point, relates to what must be considered as the banks of the Mississippi. To solve this question, we need only refer to the Louisiana Code. The article 448 defines what is meant by the bank of a river, generally, and is particular in relation to the shores of the Mississippi. It is there declared, that where there are levees, the levees shall form the banks. According to this definition, all the space between the levees and the natural banks of the river at low water, which in most places, is annually inundated at a certain season of the year, must be alternately a part of the bed or a part of the bank, according to the periodical changes, between the highest and lowest stages of the water Consequently, in front of the city of New-Orleans, this space will some times constitute a portion of the port, and at others, a part of the quay, wharf or landing place for merchandise. Considered in either respect, its use belongs to the public, and any works or constructions, made by individuals, calculated to prevent this use entirely, or to abridge it, may fairly be considered as public nuisances, and subject to be abated by the authorities of the city.

EASTERN DIST.
*April*, 1832.

Believing, as we do, from the testimony of the case, that the works and buildings, ordered to be destroyed, have a tendency to intercept the use of the bank of the river where they are placed, and which use belongs of right to the public, we are of opinion, that the mayor has a right to order them to be abated. The view which has been taken of this third point in the case, precludes the necessity of examining the remaining points.

The cause, as it is now before the court, does not require us to enter into the questions of the right of the corporation, to take from the front proprietors sixty feet for a road or street and levee, without compensation; and to cause the levee to be made at the expense of the latter. These are questions, which may hereafter be decided, if the parties think proper to bring them before the tribunals of the country.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.