## HART v. BOARD OF LEVEE COM'RS FOR PARISH OF ORLEANS.

(Circuit Court, E. D. Louisiana. February 7, 1893.)

No. 12,168.

1. EMINENT DOMAIN—LEVEES—SERVITUDE OF RIPARIAN LANDS.

Const. La. 1879, art. 156, providing that private property shall not be taken or damaged for public purposes without compensation, has no application to the location of a levee on land by the proper authorities, for such location makes the land "riparian," although it is not actually washed by the river, within the meaning of Civil Code, § 457, which provides that "on the borders of the Mississippi and other navigable streams, where there are levees established according to law, the levees shall form the banks;" and as such it is subject to the servitude of having a levee placed upon it without compensation to the owner. Bass v. State, 34 La. Ann. 498, followed.

2. SAME—EXTENT OF SERVITUDE.

Const. La. 1879, art. 214, gives to the levee commissioners the "supervision of the erection, repairs, and maintenance of the levees in said districts," and power to tax for that purpose property within the alluvial portions of said districts, subject to overflow. *Held,* that the servitude of having levees placed upon such lands without compensation is coextensive with the liability to such taxation.

In Equity. Bill by Judah Hart against the board of levee commissioners for the parish of Orleans to enjoin them from constructing a levee on the complainant's land without compensation. Injunction denied.

Farrar, Jonas & Kruttschnitt, for complainant.
Bernard McCloskey, for defendants.

BILLINGS, District Judge. The question submitted is whether the levee commissioners have the right to construct the levee upon the complainant's land without previous compensation for damages. Article 156 of the constitution of 1879 is as follows: "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." This is a limitation upon the exercise on the part of the state of the right of eminent domain. That right is the superior (eminent) domain or dominion of the state over all the property within the state, by which it is entitled, through constitutional agencies, to appropriate any part necessary to the public use. By this article of the constitution the right of eminent domain is limited so that it cannot be exercised by the state through any agency by the taking or damaging of property without previous compensation. If this was the whole of the case, the complainant would be entitled to an injunction, for his land is about to be damaged, as there has been no previous compensation. But wherever the taking or damaging of property is merely the enforcement of a servitude which that property owes, or to which it is subject, there is no exercise of the right of eminent domain, and the limitation making the compensation a condition to be previously performed has no application; for if the land or the owner is about to be compelled to submit to only an obligation by the law impressed upon property by the original grant, or by a statute under which it has been acquired or held, and independently of the right of eminent domain, there is no propriety in considering whether a previous compensation has been paid, for no compensation of any sort is due.

The question in this case is narrowed down to whether the land of the complainant owes the servitude of having the levee placed upon it. If it does, he is entitled to no relief. If it does not, he must have the injunction. There is a vast amount of learning concerning this question as related to lands located on rivers,—the learning of the civilians, and the learning of the common law. In Hollingsworth v. Parish of Tensas, 17 Fed. Rep. 109, the court dealt with the authority to locate levees as a question relative to an exercise of the right of eminent domain. In an unreported case (Eldridge v. Engineers[1]) in the western district of this state, Mr. Justice Lamar and Judge Pardee held, in substance, that the placing of levees upon riparian lands was but subjecting them to a servitude which they owed. As to riparian lands, this last is the view of the supreme court in Bass v. State, 34 La. Ann. 498. In the case before the court it is conceded by the complainant that riparian lands are

[1] No opinion filed.

subject to a servitude as to levees which makes it unnecessary to make any compensation; but he contends that, as to those lots owned by him which do not abut or lie upon the river, they, not being riparian, owe no such servitude, and there must be previous compensation. Before considering the question at issue, it may be observed that in Morgan v. Livingston, 6 Mart. (La.) 235, Judge Martin says that the servitude was impressed upon the riparian lands in the original grant from the Spanish government. It would seem that, if the large tracts thus originally granted by the sovereign had this servitude impressed upon them, the dividing them into smaller tracts or lots would not relieve from this servitude even those lots which were separated from the river by other lots. The servitude would remain upon each and every part as it did upon the whole.

But there is a simpler view which, it seems to me, disposes of the whole question. Those lands are riparian which actually extend to the river; that is, which come down to the banks of the river. Now, since 1825 the banks of the Mississippi river have been defined to be as follows: Civil Code, art. 457, provides:

"The banks of a river or stream are understood to be that which contains it in its ordinary state of high water; for the nature of the banks does not change, although for some cause they may be overflowed for a time. Nevertheless, on the borders of the Mississippi and other navigable streams, where there are levees established according to law, the levees shall form the banks."

The lands of the complainant have been bought and sold since 1825, and were acquired by the complainant under this rule or law of definition. It follows .that, no matter what would be the law in other states, in Louisiana, so far as relates to the Mississippi river, the levees established according to law are the banks. Wherever the levees are located, there are the banks of the river. It is conceded·that the proper levee authorities have located this levee upon the complainant's lots. Therefore the proper authorities have determined that the present bounds of the river bring it to the land of the complainant, and it is in the strictest statutory sense "riparian." In other states the river comes to land only when by the flow of its water it touches the soil or earth which composes it. In this state, by law and according to legal intendment, the Mississippi river touches land when its artificial banks or levees touch it. Under the operation of this statute the complainant's land is riparian. It is as if the statute had said: "Whenever the lands of any person are adjacent to the artificial banks of the Mississippi river, they are to be deemed and held to be adjacent to the river itself." This would make the land of complainant, upon his own showing, ex vi termini riparian, and subject to the servitude. When it is considered that the Mississippi river is such a vast body of water, continually changing its bed or channel, not alone by abrupt movements, but by those insidious and impalpable changes which require new banks to be built to protect not alone the land immediately adjacent, but that lying in the rear over which the floods, if unrestrained, would sweep and flow, it is seen how wise, and, at the same time, how just, is the

statutory determination of the banks of the Mississippi river, and consequently the statutory definition of what shall be "riparian lands." This definition of the banks seems to have been adopted from an early period as being the controlling direction as to what courts shall consider the bed of the Mississippi river. As an example, in Henderson v. Mayor, 3 La. 567, the court say:

"The only question remaining on this point relates to what must be considered as the banks of the Mississippi. To solve this question, we need only refer to the Louisiana Code. The article 448 defines what is meant by the bank of a river generally, and is particular in relation to the shores of the Mississippi. It is there declared that, where there are levees, the levees shall form the banks. According to this definition, all the space between the levees and the natural banks of the river at low water, which, in most places, is annually inundated at a certain season of the year, must be alternately a part of the bed or a part of the bank, according to the periodical changes between the highest and lowest stages of the water."

In Bass v. State, 34 La. Ann. 498, 499, the supreme court, through the chief justice, reaffirmed this doctrine.

The state board of engineers, including the city engineer, had located the levee of the Mississipi river upon the complainant's lots. They became in law as truly riparian as if the Mississippi river, as it flowed, came in physical contact with them. They are riparian. If riparian, the complainant conceded the servitude, and that compensation is not a prerequisite to the construction of the levee. It is true that the eighth section of Act No. 93 of 1890, under which the levee board of this district is created and is acting, gives to that body the authority to expropriate land; but, as it seems to me, that power is not exercised nor is it needed in the location of a levee. That may be done without any expropriation, for the obligation to suffer or permit the levee has been impressed upon and inheres in the land. The power to expropriate was given to the board in order that it might obtain earth for building levees, if necessary, from places outside the district, or beyond the extent of the servitude. In precise accordance with this view, the constitution of 1879 (article 214) delegates to the levee commissioners of the various levee districts the "supervision of the erection, repairs, and maintenance of the levees in said districts;" and to that effect they may impose a tax upon the taxable property situated within the alluvial portions of said districts subject to overflow. As it seems to me, the territory subject to the servitude is coextensive with the territory declared subject to the tax. All the lands within the alluvial portions of the districts subject to overflow may be taxed for the levees, and the law and the reason of the thing subject the same extent of land to the servitude.

With reference to the Mississippi river, the obligation to submit to the location of levees—the servitude that is being considered— has a much greater geographical expansion or extent than the ordinary obligations with reference to smaller streams. The obligations of the proprietor of land with reference to ordinary streams spring, as do the injuries, from the abrasion of the stream and the change of its bed; but the obligations of the proprietors of lands lying upon or in the vicinity of the Mississippi river originate, as do

the dangers, not from mere abrasion of the earth and the change of the channel, but from the fact that the body of the stream is so vast, and the bulk of the water so immeasurable, that the inundation and devastation are threatened upon all the low-lying lands, whether they be immediately proximate to the river or miles distant. The forced diffusion of the danger from a cause acting so resistlessly has caused the statute to impress upon the lands a servitude for a common protection equally extended. My opinion, therefore, is that, the levees of the Mississippi having been located by the lawful authorities upon the complainant's lands, notwithstanding their remoteness from the natural bed of the river, they are by statute wisely made riparian, and subject to the levee servitude, which dispenses the defendants from making compensation for the damage which the location of the levee may cause to complainant.

The injunction must therefore be refused.