PROVOSTY, J.
The main entrance to St. Patrick’s Cemetery No. 2 is from Canal .street, which is the principal street of the city of New Orleans. The visitor, as he enters, has in front of him the main avenue •of the cemetery, the avenue which is followed by all funerals. After he has proceeded some 96 feet beyond the entrance, he has at his right an open space in the form of a semicircle, around which are 15 tomb lots, now occupied by tombs and monuments. If the circle were complete, its inside diameter would be 64 feet, and that is the width •of the opening on the main avenue, and the depth from the line of the avenue is, naturally, 32 feet. When the cemetery was first established and the lots around this .semicircle were sold, a large live oak tree with spreading foliage stood in the center •of this semicircle. It died in 1890, and had to be removed. In its place a monument on .a square pedestal was erected, representing the Virgin Mother seated at the foot of the cross, the body of her Crucified Son on the ground before her, one arm passed over her knee and hanging down, and the head resting upon her bosom. •
One of the lots and tombs in this semicircle is owned by plaintiffs as heirs of their parents, who are buried therein. The cemetery belongs to the congregation of St. Patrick’s Church. Its history and legal status are given in the case of Burke v. Wall, 29 La. Ann. 38, 29 Am. Rep. 316. All that need be said here in that connection is that the cemetery is regularly laid out according to a plan, with avenues, etc., and every burying lot marked and numbered; that the lots have all or nearly all been sold, and always in accordance with this plan; that this plan shows this semicircle, with the tomb lots around it duly numbered; that by custom, if not from any more regularly constituted authority, the parish priest of St. Patrick’s Church has represented the congregation in selling the lots and in looking after the cemetery; that the cemetery dates back to the year 1833, and, so far as is now known, the plan in question was made then, and the lots began then to be sold.
The defendant parish priest has caused the monument of the Virgin to be removed from the semicircle, and has sold to his mother a lot on the central part of the space within the semicircle, and was having a tomb constructed on this lot, when the present suit was brought, enjoining him from proceeding further.
The defense is that the plaintiffs have no rights to, on, or over this open space, except a right of passage to and from their tómb, and that ample space is being left for that purpose; that, far from injuring plaintiffs, the acts complained of benefit them, because the removed monument obstructed the view of their tomb from the main avenue, and obstructed the passage to it, whereas, the tomb that is being erected will not have that effect, and will moreover beautify the place.
This defense is untenable.
Where lots are sold with reference to a plan, showing avenues and open places upon which the lots have their frontage, the avenues and open places go with the lots, by implied dedication. Nothing is better settled than this, as applicable to the cities of the living. We can see no reason why it should not be equally applicable to the cities of the dead. This court so applied it with reference to this very cemetery in Burke v. Wall, supra.
The Mater Dolorosa monument occupied 19 square feet; the tomb defendant is erecting occupies 70 square feet. How the latter can obstruct the passage or the view *443 less than the former is not apparent. It may be only through sentiment, or an aesthetic sense, that plaintiffs prefer to have a monument, or even a mere open space, before their tomb, than another tomb; but such is their preference, and it is their legal right.
It is said in the argument that on the plan this semicircle is simply an open space; no legend, or words, upon it indicating an intention, or promise, that it is not to be occupied by tombs. But silence is sometimes as eloquent as words; the thousand spaces destined to tombs in this cemetery each has its number; these numbers, like so many tongues, tell us that these spaces are destined to tombs; while the blank of this semieirclej like an eloquent silence, tells us that here no tomb is to be placed. And, besides, at the time the lots around this semicircle were sold, the situation spoke for itself. .■The large oak was promising to stand sentinel in this semicircle, not only over the erection of the tombs around it, but also over their crumbling into dust. And the cemetery authorities themselves interpreted the situation when they erected the pious monument to take the place of the tree that .had not kept its promise of longevity.
The injunction restrains defendant from proceeding further with the construction of the tomb in question, and from making a burial place of the open space in question, and, by the judgment appealed from, it has been made perpetual.
Judgment affirmed.