148 So. 677

**MORAN v. SIMONIN et al.**

No. 31527.

May 1, 1933.

Rehearing Denied May 29, 1933.

Harry P. Sneed, of New Orleans, for plaintiff.

Fred G. Veith, of New Orleans, for defendants.

LAND, Justice.

The plaintiff, Mrs. Isabella Turner Moran, is the surviving widow in community of

Thomas J. Moran, deceased, who acquired at tax sale on July 13, 1900, "A certain square of ground and improvements thereon in the Sixth District of the City of New Orleans in square bounded by an unknown street, Twelfth, Lowerline or Marly and St. Peter Streets, designated as Square 13, Marlyville."

This is an action in jactitation, in which plaintiff claims, as actual possessor in her own right, a one half undivided interest and, as usufructuary of the other half, in that part of the property described in the tax deed of her late husband, which is now bounded at the lower or south end by Pine street, at the upper or north end by Lowerline street, on the east by Apricot street, and on the west by Broad place.

The "unknown street" referred to in the tax deed is now Broad place; Twelfth street is now Apricot; St. Peter street is now Broadway; and Lowerline street is the Lowerline street as known to-day.

Pine street, at the lower or south end of the tract in dispute, between Broad place and Twelfth street, had no legal or physical existence until the year 1914, when the Morans divided the property by cutting a passage through same, which later developed into a street, now called Pine. No dedication of Pine street between Broad place and Twelfth street can be shown other than by plans which the Morans made.

With the above explanation, the land described in the tax deed to Thomas J. Moran of date July 13, 1900, can be identified without difficulty. The Morans have sold all of the tract, except the part involved in this suit.

The defendants in this case, charged with slandering the title of plaintiff, are Arthur Henry Simonin, and his vendors, Mrs. Ellen Spansel Berger, wife of Charles Berger, and Mrs. Nellie Apken, wife of Anthony Russo.

Defendants admit in their answer that plaintiff has been in possession of the property in dispute for more than one year, but deny that she has title to same, and set up title in themselves.

It is well settled that where the defendant in a jactitation suit admits the slander and claims title, the suit is thereby converted into a petitory action, in which the defendant must recover on the strength of his own title, and has no interest in establishing title in a third person. Garrett v. Spratt, 131 La. 707, 60 So. 199; Teddlie v. Riser, 121 La. 672, 46 So. 688.

In a case like this, defendants have to make good their titles, and have to establish that of their author. Lange v. Baranco, 32 La. Ann. 702; Brown v. Brown, 15 La. Ann. 169.

Now, as to the alleged title upon which defendants rely: May 31, 1916, John M. Boyden sold to Michael J. Spansel a triangular piece of ground bounded by Broad place, Bernadotte, Apricot, and Lowerline or Marly streets, and designated as Square 13 A, Marlyville. There can be found no such square. However, defendants contend that this is the property in controversy. Besides, the record fails to show from whom Boyden obtained title. Plaintiff had possessed the property quietly and without interruption, under a claim of ownership, for many years prior to the disturbance by the city of New

Orleans in the year 1929. Moran v. City of New Orleans, 170 La. 499, 128 So. 290. Plaintiff's actual possession at the date of this suit, November 5, 1930, is admitted by defendants. We agree with the trial judge that "Boyden had no more title to the property than he had to the moon."

August 16, 1919, Spansel sold the property to Philip J. Veith. July 21, 1924, Philip J. Veith resold to Spansel. July 22, 1924, Spansel sold to the defendant Mrs. Nellie Apken Russo, his niece. A counter letter registered November 12, 1926, shows that the defendant Mrs. Ellen Spansel Berger had one-half interest in the property. June 12, 1930, the defendants Mrs. Russo and Mrs. Berger sold to the defendant Arthur Henry Simonin.

Spansel testified that he did not have the title examined; that he did not know whether Boyden owned the property or whether he did not; that no money passed at the time of sale from Boyden to him; that he and Mr. Philip Veith were friendly; and that Mr. Veith asked him to come to his office one day, if he wanted to make any money, and Boyden sold him the property. When asked how he hoped to make any money out of the deal, Spansel answered that he hoped that the rightful owner would come along and that he would get his money back with interest. Tr. 117, 118.

It is evident that Spansel acquired no title from Boyden.

Spansel stated also on the witness stand that he sold the property to Mr. Philip Veith, who resold it to him, but that no money passed between them. Tr. 117.

The defendant Mrs. Nellie Apken Russo, niece of Michael J. Spansel, admitted on the witness stand that no money passed between her and Spansel when he sold the property to her. She stated that Spansel had told her that he had been paying taxes on the property for a number of years and could do so no longer, and, if she would pay the taxes, he would turn the property over to her and she could get title. Tr. 48.

When asked the question, "You knew the title to that property was very defective?" the witness (Mrs. Nellie Apken Russo) answered: "They said 'Pay the taxes and by paying the taxes for ten years you can get title,' and I have paid the taxes for four years and the City made me pay for the sidewalk and for paving of the street." Tr. 49.

It is evident from her testimony that this defendant knew that Spansel had no title.

The defendant Mrs. Ellen Spansel Berger, daughter of Michael J. Spansel, testified:

"I had nothing to do with its purchase, but my daddy did, and he was paying taxes, and when he sold it to Mrs. Russo (defendant, Mrs. Nellie Apken Russo) he turned half over to me.

"Q. Did you give him any money? A. No, I had no reason to." Tr. 50, 51.

"Q. You knew this property would give you trouble sooner or later? A. My daddy paid the taxes for years *and I understood there was no title to it. I never heard of there being title to it*, and no one came to my daddy to ask him how he got it." Tr. 51.

This witness was again asked the question: "You said when you bought this property *you knew there was no title to it?* A. Yes, I understood *there was no title*." Tr. 52.

Manifestly, this defendant had no title.

The defendant Arthur Henry Simonin, the vendee of the defendants Mrs. Ellen Spansel Berger and Mrs. Nellie Apken Russo, stated on the witness stand that he paid for the property the sum of $537.25; but that it was not bought on his own account, but for the account of Joseph Ebert; and that although the property is in his name, it is really Mr. Ebert's property. Tr. 46, 47.

This witness stated that, although he had no title to the property, he was to receive one-sixth of the profits, and that the purchase price represented the amount of the taxes Spansel and the defendant Mrs. Nellie Apken Russo had paid. Tr. 47.

It is clear, therefore, that these defendants have no title at all to the property in controversy. They have neither made good their titles, nor that of their author, John M. Boyden.

On the other hand, plaintiff has been in actual possession of the property for a number of years under a tax title prima facie valid, and should recover in this suit.

■■ 2. Plaintiff claims, as the result of the slander of her title by defendants, the sum of $6,000 in damages, as attorney's fee, and costs expended and to be expended in an effort to clear the title to the property beclouded because of the slander by defendants.

The only testimony as to damages incurred by the slander is that of plaintiff, and it relates exclusively to her litigation with the city of New Orleans. Tr. 26, 27. See Moran v. City of New Orleans, 170 La. 499, 128 So. 290.

Such damages, if recoverable at all, could not be recovered in this case against these defendants. Besides, a plaintiff recovering in an action of jactitation is not entitled to recover attorney's fees as damages. Meraux & Nunez, Inc. v. Gaidry et al.; 171 La. 852, 132 So. 401.

■■ 3. The exception of misjoinder was properly overruled in the court below, as all of the defendants asserted title in themselves and thereby made themselves parties to the suit. As the petition upon its face discloses a right and cause of action, the exception of no right or cause of action is without merit.

4. The judgment of the civil district court rejected the demands of plaintiff and the demands of defendants, at their costs, and decreed that the parties to the litigation pay the costs by them respectively incurred. From this judgment plaintiff and defendants have appealed.

For the reasons assigned, the judgment appealed from is annulled and reversed.

It is now ordered that plaintiff, Mrs. Isabella T. Moran, surviving widow in community of Thomas J. Moran, deceased, be recognized as the true owner in her own right of a one half interest in, and as usufructuary of the other half of, an irregular square of ground in the Sixth district of the city of New Orleans, bounded by Broad place, Lowerline, Apricot, and Pine streets, as known to-day, and that plaintiff be quieted in the possession of same.

It is further ordered that defendants Arthur Henry Simonin, Mrs. Ellen Spansel

Berger, wife of Charles Berger, and Mrs. Nellie Apken, wife of Anthony Russo, be decreed without title to or interest in or to the property in dispute in this case; that these defendants be adjudged guilty of slandering the title of plaintiff to the property in question; and that the demands of defendants be rejected.

It is further ordered that plaintiff's demand for damages by reason of the slander of her title by defendants be rejected, and that defendants pay all costs of this suit.

ROGERS, J., takes no part.