12 So.2d 1

MORAN et al. v. BECHTEL.

No. 36005.

Dec. 30, 1942.

Rehearing Denied Feb. 1, 1943.

Dart & Dart, of New Orleans, for appellants.

Francis P. Burns, City Atty., and William Boizelle, Asst. City Atty., both of New Orleans, for City of New Orleans, intervenor and appellant.

Charles J. McCabe, of New Orleans, for appellee.

HIGGINS, Justice.

The plaintiffs instituted this action for specific performance of a contract to sell real estate. They alleged, in an original and two supplemental petitions, that in a written agreement they had offered to sell and the defendant had agreed to purchase a vacant plot of ground designated as Square 13-A, in the Sixth District of the City of New Orleans, bounded by Broad Place, Lowerline, Apricot and Pine Streets, for the price and sum of $7,500, plus paving charges; that thereafter the defendant had illegally refused to accept title to the property, stating that it was faulty and subject to litigation; that they acquired the property by inheritance from their parents, the father having purchased it at a tax sale on July 13, 1900; that, in the alternative, they and their ancestors in title had remained in possession of the property

for more than thirty years and thereby acquired it by acquisitive prescription; and that the City of New Orleans was estopped from claiming the property because one of the assessors of the City had placed it on the assessment rolls and they had paid the taxes thereon to the City for two and one-half years. They also pleaded res adjudicata against the City of New Orleans.

The defendant admitted that he refused to accept title to the property because his attorney and the title bonding company would not approve the title, and the plaintiffs were unable to furnish documentary or other proof of ownership; and that, as the City of New Orleans was claiming the property as a part of the streets, it should be informed of the suit. In reconvention, he asked that the contract be annulled and his deposit returned.

The City of New Orleans intervened in the case, alleging that the land involved was public property by virtue of its dedication as a street or locus publicus.

After a hearing on the merits, the trial judge found that the plaintiffs did not have any title to the land in question whatsoever; that the tax title relied upon covered an irregular four-sided or trapezoidal plot of land designated as Square 13 of Marlyville, in the Sixth District of the City of New Orleans, bounded by Unknown Street, Twelfth, Lowerline or Marly, and St. Peter Streets, an entirely separate and distinct or a different piece of land from the so-called Square 13-A, which was located in the Town of Carrollton in the Seventh Municipal District; that the evidence showed that the plaintiffs and their author in title had not had possession of the piece of vacant property in question for thirty years; that the City of New Orleans had failed to show that the land had been dedicated and used for public purposes; that the contract of sale should be cancelled and the defendant was entitled to the return of his deposit of $750; and that both the plaintiffs' suit and the petition of intervention of the City of New Orleans should be dismissed. Formal judgment was entered accordingly.

The plaintiffs and the intervener appealed separately.

The record shows that on July 7, 1900, the late Thomas J. Moran, father and ancestor in title of the plaintiffs, purchased at tax sale, the following described property: "A certain square of ground located in the *Sixth District* in Square bounded by Unknown Street, Twelfth, Lowerline or Marly, and St. Peter Streets, and which Square is designated by the *Number 13, Marlyville.*" (Italics ours.)

The property in controversy, claimed by the plaintiffs to be included in the above tax sale, is described by the petitioners as follows:

"A certain square of ground situated in the Sixth District of the City of New Orleans, in the square bounded by Broad Place, Lowerline, Apricot and Pine Streets, designated as Square No. 13-A, on a sketch and plan of survey made by Guy J. Seghers, Engineer and Surveyor, dated August 5th, 1936, a copy of said sketch and plan being attached hereto and made part hereof for reference, said square measuring 190', 8", 3''' front on Broad Place, 174', 0", 1''

front on Apricot Street, 191', 1", 5''' front on Pine Street, and 120', 4", 7''' front on Lowerline Street, being a portion of a square of ground acquired by the late Thomas J. Moran by purchase from B. T. Walshe, State Tax Collector for the Sixth District of the City of New Orleans, * * *" dated July 7, 1900, which sale and adjudication was confirmed by act passed before B. T. Walshe, Jr., Notary Public, on July 13, 1900, registered in C. O. B. 175, Folio 544.

The testimony of the three surveyors, as witnesses for the intervener, and the deeds, maps, and surveys offered in evidence, show that the trapezoidal plot of land designated as Square 13 of Marlyville, in the Sixth District of the City of New Orleans, acquired by Moran at tax sale, is an entirely different and separate piece of land from the vacant piece of property designated as Square No. 13-A; that the so-called Square 13 is in the Sixth Municipal District, and that the so-called Square No. 13-A is in the Seventh Municipal District; that the plot of ground described as Square 13-A was originally a part of McCarthy Plantation, which was later subdivided by its owners into squares and streets and laid out as the Town of Carrollton and at no time formed any part of the Charles Derbigny and N. B. Lebreton or Marly tract in which Square 13 is located; that these two pieces of land, since 1832, were separated by a dedicated street named "Lowerline", which divided the Sixth Municipal District from the Seventh Municipal District; that when Peter (Pierre) Marly purchased from the New Orleans Canal and Banking Company, Samuel Kohn, Laurent Millaudon and John Slidell, on June 4, 1833, the 76 acres of the Derbigny and Lebreton tract, which was separated from the Town of Carrollton by Lowerline Street, he had the property subdivided and certain streets dedicated, one of which was Marly Avenue, a street adjacent to and parallel with Lowerline Street and forming a double street; that the piece of land described as Square 13 in Marlyville had its upper border on Marly Avenue according to that plan and did not extend across Marly Avenue and Lowerline Street into the Town of Carrollton and the Seventh Municipal District; that the plaintiffs and their ancestors in title have developed and received the benefit of the whole of Square 13, purchased at tax sale, by dividing it into lots, erecting buildings thereon, and selling the property to third parties, and that the plaintiffs have not produced any indicia of title whatsoever to the plot of ground designated as Square 13-A, because it was definitely shown that that piece of land was not included in the tax sale or in Square 13.

The foregoing evidence is corroborated by the fact that when the succession of the plaintiffs' father (Thomas J. Moran) was opened in 1913 by the widow and his heirs, who are the plaintiffs in this suit, there was nothing placed in the succession record to show that the plaintiffs considered or claimed that the piece of land described as Square 13-A was included in the land designated as Square 13; that on November 22, 1913, by Act before Wynne G. Rogers, Notary Public, the children of Mr.

Moran sold all of their rights, title, and interest "in the whole of said Square acquired by the late Thomas J. Moran on July 13, 1900 * * *", as per act before B. T. Walsh, Notary Public, (C. O. B. 175, Folio 544); and that there is nothing in this sale to show that the parties thereto claimed that Square 13-A was included in Square 13 of Marlyville nor does the sketch of the Civil Engineer, Adloe Orr, which is annexed to the act, show that the property in controversy was considered contained therein. It further appears that Thomas C. Moran at no time claimed the ownership of Square 13-A.

▮ From the foregoing evidence, our views are in accord with those expressed by the learned trial judge on the point that Square 13-A was not included in the tax sale or Square 13, it being a separate and distinct piece of land.

▮ With reference to the evidence on the question of prescription of thirty years, the preponderance of the evidence clearly shows that the plaintiffs and their ancestors in title have not been in actual physical possession of the property in controversy for a period of thirty years. It appears that a dairy operator by the name of Denis Ruffin, who owned property adjacent to the land involved herein, fenced in this piece of ground with his own for a period from 1895 to 1921 and grazed his cattle thereon, without any complaint whatsoever from any of the Morans, including the plaintiffs, or anyone else, although at all times Ruffin did not in any way claim to own the property and knew that it did not belong to him. The plaintiffs, in their testimony, would not deny that the land was in Ruffin's possession, as he and other witnesses who corroborated him stated. They would not state that he was their tenant. When Mrs. Isabelle Turner, widow of Thomas J. Moran, died May 3, 1937, and her succession was opened in the Civil District Court, the plaintiffs sought for the first time to make a record title in themselves by including the piece of land in question in the succession. Therefore, the district judge properly concluded that the plaintiffs had failed to establish their plea of thirty years' acquisitive prescription.

The intervener, the City of New Orleans, having claimed that the property in question was a part of land dedicated as a street or locus publicus, contended that insofar as it was concerned prescription would not run against it in favor of the plaintiffs, because it was public property. Since we have already found that the plaintiffs did not have possession of the land in controversy for thirty years, it is unnecessary to consider this issue.

Although the trial judge stated that he was "satisfied from the evidence that the property in question was originally a part of the town of Carrollton, * * *" and was located in the Seventh and not the Sixth District, he found that the record did not·show that this piece of land was ever dedicated to public use as a street and used as, such.

In the case of the City of New Orleans v. Carrollton Land Co., Ltd., 1913, 131 La. 1092, 60 So. 695, 697, the ownership of "Frederick Square" in the Town of Carrollton was involved and this Court, in

holding that "Frederick Square", "Hamilton Square" (now Palmer Park) and "Green Square" had been dedicated for public use according to the Zimpel Map of Carrollton, stated:

" * * * That there was a map of the town of Carrollton by Charles F. Zimpel in 1832 is made clear by the recognition of that map by the Legislature in the act incorporating the town of Carrollton, No. 91 of 1845, and again in the charter of the New Orleans & Carrollton Railroad Company, Acts of 1833, p. 8. We had that map before us in April, 1854, in the case of Burthe v. Blake and Town of Carrollton, 9 La.Ann. 244, where we refer to—'the original plan of Carrollton, drawn by Charles F. Zimpel, engineer and surveyor, dated the 16th day of March, 1832, deposited for reference in the office of E. R. Stringer, notary, in this city and of whom Theodore Guyol is the successor in office.'

"And:

" 'It is admitted (in this record) that all the records of E. R. Stringer, notary public, together with the original Zimpel plan of Carrollton referred to in his acts as being annexed to his act of 1833, are not extant; the same having been destroyed by fire many years ago.'

"The Zimpel map of the city of New Orleans and its vicinity, containing a map of Carrollton, made by Charles F. Zimpel in 1834, he being the same person who made the map of the town of Carrollton in 1832, is therefore competent evidence for the purpose of showing that 'Frederick Square' was dedicated to the public by the owners of the McCarthy [McCarty] plantation in 1832. [Brackets ours.]

* * * * * *

"In an act of sale in 1840 between Samuel Cohn and his co-owners of the McCarthy plantation of certain pieces of property in Carrollton, reference is made to the Zimpel plan, and the lots are sold with reference to it. And these co-owners therein mention that they had caused their plantation to be divided into 316 lots as shown on the Zimpel map, thus showing that they persisted in their dedication of the 'three squares' to public use."

The above squares, together with the land in controversy, are plainly shown on the photostats of the Zimpel 1834 map or plan of the Town of Carrollton. It appears from this plan that the land in question is a part of the intersection of Lowerline, Twelfth and Bernadotte Streets.

In the case of Burthe v. Blake and The Town of Carrollton, 1854, 9 La.Ann. 244, the plaintiff sought an injunction to prevent the opening of Levee and Clinton Streets, which had been laid out according to the Zimpel plan of the Town of Carrollton. Levee Street was the first street adjacent to the then river front of the Town, and Clinton Street, the first street parallel to and above Lowerline Street running from the river. In ordering the streets to be opened, the Court declared:

"It further appears, that the expediency of opening the streets in this quarter of the town, had been considered by the council, and determined upon as conducive to its prosperity.

"On the other hand, it appears that the plaintiff and his authors have had the ground, appropriated by the plan for these streets, under enclosure for many years.

\* \* \* \* \* \*

"The founders of this town, when they caused this plan of the Macarty plantation to be made, dividing it into squares or portions of land, numbered and bounded by streets and avenues, and offered it at auction to the public, clearly intended to give it the character and destination of suburban property. No one holding squares and pieces of ground described in his title with reference to this plan, which has been the subject of legislative recognition [by Act 91 of 1845], can consistently with his own title, the manifest intention of his authors, and the rights of other citizens who have bought on the faith of the same declared intention and appropriation, dispute the public character of that portion of the land so reserved for streets and avenues, *whenever the corporation of Carrollton shall consider the proper time has arrived for having them opened.* The plaintiff must be considered as having bought his property with reference to this ultimate exercise of power, and is entirely unsupported in his pretension that by the sufferance of the municipal council, that he should enclose the lands, *while the public convenience did not require the opening of the designated streets, he could thereby acquire a right in the soil which he never purchased,* and which on the contrary was excluded from his ownership, by the term of his deed." (Italics and brackets ours.)

In Lafitte v. City of New Orleans, 1900, 52 La.Ann. 2099, 28 So. 327, 328, the Court said:

"\* \* \* Hence, when the plaintiff bought according to the subdivision in question, he became committed to the streets forming part of the subdivision, and cannot be heard to dispute their existence. He cannot take the position that the streets are not physically laid off, and it makes no difference that they had not been actually open to use. It was for the city authorities to say when they should be opened, and no prescriptive right to keep them from being opened could arise in favor of plaintiff. \* \* \* He had no right to fence up the streets, and, if he found them fenced when he took possession, that gave him no right to keep them fenced. So long as the city did not act, his fences might remain, but merely on sufferance. \* \* \* The plan of the subdivision showed the streets, their place of location, width, etc.; and, the dedication having taken place, the city authorities exercised but a proper police power when directing and enforcing their opening. Daublin v. Mayor, etc., 1 Mart. [O.S.], 185; 2 Dill.Mun.Corp., (3 Ed.) 680; Sheen v. Stothart, 29 La.Ann. 630; Henderson v. Mayor, 3 La. 563."

See, also, Sheean v. Carra, 145 La. 440, 82 So. 399; London & San Francisco Bank v. City of Oakland, 9 Cir., 90 F. 691; 8 Ruling Case Law, page 896, § 20; and Vol. 1, Elliott on Roads and Streets, § 129, 3rd Edition.

From the testimony of three reputable surveyors, it was shown by the City that the property in question, according to all

of the maps and surveys filed in the record, was located in the Town of Carrollton in the Seventh Municipal District, and not in Marlyville in the Sixth District; that the plot of land in controversy is shown to be a part of the street area where Lowerline, Twelfth and Bernadotte Streets intersect, due to the fact that there is an offset in Lowerline Street at that point; and that this area is as clearly indicated for public use as a street as certain other triangular parts of street areas and particularly "Frederick Square", "Hamilton Square" and "Green Square", as well as the general streets and avenues themselves.

This testimony, corroborated by the maps, plans, and old deeds is consistent with the previous holdings of this Court that the owners of McCarty or Macarty Plantation in incorporating the Town of Carrollton under the Zimpel plans of 1832–1834, which received legislative sanction, dedicated certain parks, streets, and avenues therein for public use.

█ Apparently, our learned brother below was under the impression that if the street was not actually used for public purposes that the dedication was incomplete. The fact that the property in contest was not immediately put to public use does not eliminate the presumption, juris et de jure, of its dedication to the public, because years after the creation of the Zimpel map, many of the streets and public places in Carrollton (notably Frederick Square), all shown thereon and now in use, lay undeveloped and unused until public necessity required their opening and development by the public officials.

In the case of Richard et al. v. City of New Orleans, 1940, 195 La. 898, 197 So. 594, the Court held that Elysian Fields Avenue at Florida Walk, a dedicated avenue, which had remained in its original or unused state to the date of the litigation, was subject to opening for public use by the City authorities.

█ It is our opinion that the evidence in this case shows a dedication of the property in question as an area for street use by the public and, therefore, like other public places, avenues, and streets in the Town of Carrollton, according to the Zimpel map and surveys, belongs to the City of New Orleans for that purpose.

█ With reference to the plaintiffs' plea of estoppel against the City of New Orleans, it was shown that the plaintiffs made no effort to establish a record title to the land in question until they opened the succession of their mother in 1937, and had themselves placed in possession of it, together with other property, and then insisted that the assessor place it on the assessment rolls. The City Attorney had previously informed the assessor that the plaintiffs were not the owners of the property and instructed him not to put it on the assessment rolls, but, in disregard of his request, the assessor put the property on the assessment rolls and the plaintiffs then paid two and one-half years taxes to the City thereon. The record shows that for more than 100 years the property in question had not been placed on the assessment rolls. The mere fact that the land has been taxed by the City will not preclude the public from claiming the use of the

land for a public street. Louisiana Ice Mfg. Co. v. City of New Orleans, et al., 43 La.Ann. 217, 9 So. 21.

See, also, Town of Lake View v. Le-Bahn, 120 Ill. 92, 9 N.E. 269; City of Chicago v. Wright, 69 Ill. 318, 319; and Lemon v. Hayden, 13 Wis. 159.

In Richard v. City of New Orleans, supra, although the Commissioner of Public Utilities reported to the Commission Council that it would be necessary to expropriate the property in contest for a public street, because he was of the opinion that it belonged to the plaintiff in the case, the Court stated that:

"* * * The City could not be divested of its title and possession of the property by the statement. This could be done only by vote of at least two-thirds of the members of the Commission Council, voting on the specific question, that the property was no longer necessary for the public use to which it was originally destined. Section 8, Act 159 of 1912, as amended by Act 338 of 1936." [195 La. 898, 197 So. 599.]

See, also, In re Quaker Realty Company, 7 Orleans App. 296.

The plea of estoppel is without merit.

The plea of res adjudicata and the contention that this Court is bound by the facts previously stated by it with reference to this land are founded upon the cases of Moran v. City of New Orleans, 1930, 170 La. 499, 128 So. 290 and Moran v. Simonin et al., 1933, 177 La. 457, 458, 148 So. 677. The first case was strictly a possessory ac-

tion by the Morans against the City of New Orleans, covering the land in question. The trial judge dismissed their suit, reserving their right to institute another action, petitory or otherwise, to have their rights determined. On appeal, the court found that the Morans had been in possession of the property for a year and quieted them in the possession and enjoyment of the property. The question of title was not at issue in that suit. In the second case, the Morans instituted a jactitation action against Simonin and others, not including the City of New Orleans. The defendants converted it into a petitory action. The district court rendered judgment rejecting both the plaintiffs' and the defendants' demands and, on appeal, the Court concluded that the defendants did not have any title whatsoever and recognized the plaintiffs as owners.

In both of the foregoing cases, the Court, on the record as made up, made certain observations, some of which were obiter dicta, and found that the plaintiffs had enjoyed possession of the land for many years, and that they were the ones who had dedicated a part of their property for the opening of Pine Street, and that the City had not taken any action in respect to Pine Street.

The evidence herein shows that Lowerline Street and Marly Avenue were dedicated as such many years before Thomas C. Moran purchased Square 13 at tax sale in 1900 and that Pine Street at the locality in question, is simply a new name for the double street with the dual names, Lowerline and Marly. Therefore,

it is error to say that Pine Street was formed from the Moran's land. Lowerline Street from Broad Place to Howard Avenue was designated as Pine Street by Ordinance No. 7742 of the Commission Council Series, dated February 20, 1924. There is much more testimony and additional maps and surveys in the record in the present case than there was in the two previous records wherein the Court found that the Morans had been in possession of the property in controversy for many years and were the ones who dedicated and opened Pine Street. As the City was not a party in the case of Moran v. Simonin et al., supra, it certainly could not be bound by what the Court stated therein.

It is our conclusion that the two above cited authorities do not involve the same issues and the same parties, as here, and that the plea of res adjudicata is not well-founded and the holding in the two cited cases is not the law of the case in the present controversy. On the contrary, if there is any law of the case it would be that established by the cases of Burthe v. Blake and Town of Carrollton, et al., and City of New Orleans v. Carrollton Land Co., Ltd., supra, holding that the places indicated on the Zimpel plans of 1832 and 1834 of the Town of Carrollton as public streets and places were dedicated as such by the owners of the McCarthy plantation.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is amended so as to render judgment in favor of the intervener, the City of New Orleans, and against the plaintiffs, Arthur J. Moran, Alfred J.

Moran, Henry P. Moran, and Ida Moran Sicard, dismissing and rejecting their suit and declaring the property described as Square 13-A in the Seventh Municipal District of the City of New Orleans, bounded by Broad Place, Lowerline, Apricot, and Pine Streets, to be a public place, dedicated as such to the use and enjoyment of the inhabitants of the City of New Orleans, and in all other respects the judgment is affirmed; plaintiffs to pay all costs of court.

McCALEB, J., takes no part.

ROGERS, J., absent.